<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

JOSEPH LAMAR ANGLIN,

              Plaintiff,

            v.

ROBERT MATTHEW ANGLIN, *et al.*,

              Defendants.

Case No. 2:16-cv-04049 (BRM) (JSA)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are two motions. The first is Defendants Wilentz, Goldman & Spitzer, P.A. ("WGS") and Edwin Leavitt-Gruberger, Esq.'s ("Leavitt-Gruberger") (collectively, the "Wilentz Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 530.) The second is Defendants Christan Anglin ("Christan") and Robert Anglin's ("Robert") (collectively, the "Anglin Defendants") (together with the Wilentz Defendants, "Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 532.) *Pro se* Plaintiff Joseph Lamar Anglin ("Plaintiff") filed ten separate submissions related to Defendants' summary judgment motions (ECF Nos. 555–57, 560–65, 567); the Court will construe these as oppositions. Defendants filed their respective replies, as well as letter responses related to arguments raised in some of Plaintiff's submissions. (ECF Nos. 558, 559, 573, 574.) Having reviewed the parties' submissions filed in connection with the Motions[1] and having declined to hold oral argument pursuant to Federal Rule of Civil

---

[1] Defendants framed both their briefing and proposed orders in support of their Motions for Summary Judgment as seeking dismissal, with prejudice, of Plaintiff's Third Amended Complaint (the "TAC"). (*See generally* ECF Nos. 530, 532, 573, 574.) There is an abundance of

Procedure 78(b), for the reasons set forth below and for good cause having been shown, the

Wilentz Defendants' Motion for Summary Judgment (ECF No. 530) is **GRANTED**, and the

Anglin Defendants' Motion for Summary Judgment (ECF No. 532) is **GRANTED**.

---

caselaw from the Third Circuit and the District of New Jersey which essentially provides that a district court shall enter judgment in favor of the party on the subject claims, rather than dismiss the claims subject of a motion for summary judgment. *See, e.g., Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 121 n.2 (3d Cir. 1999) ("Because the grant of summary judgment and the dismissal of the complaint are inconsistent, we will disregard reference to the 'dismissal' of [plaintiff's] complaint and treat the record as a summary judgment record."); *see also Fanelli v. Centenary Coll.*, 112 F. App'x 210, 212 n.2 (3d. Cir. 2004) ("When a district court grants a motion for summary judgment, it should enter judgment for the prevailing party, not dismiss the complaint.") (citing *Cheminor Drugs*, 168 F.3d at 121 n.2); *Sconiers v. United States*, 896 F.3d 595, 596 n.2 (3d. Cir. 2018) (affirming grant of summary judgment in favor of defendants and disregarding lower court's order to dismiss plaintiff's claims with prejudice); *Revell v. Jersey City*, Civ. A. No. 06-32102009, 2009 WL 3152110, at *1 n.2 (D.N.J. Sept. 28, 2009) ("The resolution of a motion for summary judgment does not lead to a dismissal of the complaint, only the grant or denial of summary judgment."); *Indus. Mar. Carriers v. Thomas Miller, Inc.*, Civ. A. No. 06-5625, 2009 WL 5216971, at *1 n.1 (D.N.J. Dec. 29, 2009) (granting summary judgment in favor of defendant but disregarding defendant's request to dismiss plaintiff's amended complaint); *Bay Colony Condo. Assoc. v. Scottsdale Ins. Co.*, Civ. A. No. 11-4865, 2012 WL 6725824, at *5 n.5 (D.N.J. Dec. 26, 2012) ("A grant of summary judgment on a claim and the dismissal of a claim are procedurally distinct."). Therefore, in addressing Defendants' Motions for Summary Judgment any requests for dismissal are construed as requesting judgment in favor of the movants.

## I.   BACKGROUND

### A.   Factual Background[2]

This is an intrafamily dispute over the administration of an estate that has resulted in over eight years of litigation. Frederick Yanz died intestate in Livingston, New Jersey on or about December 25, 2013. (ECF No. 530-2 ¶ 1; ECF No. 532-2 ¶ 1; ECF No. 562 ¶ 1; ECF No. 567 ¶ 1.) Plaintiff, a resident of Florida and a first cousin to Yanz, sued Defendants Robert, Christan, Leavitt-Gruberger, and WGS for unlawfully removing assets from Yanz's estate (the "Yanz Estate"). (*See generally* ECF No. 125.)

On or about December 31, 2013, Robert, a second cousin to Yanz, was contacted by the

---

[2] Defendants filed Statements of Material Facts Not in Dispute ("SMF") (ECF Nos. 530-2, 532-2), in accordance with Local Rule 56.1. L. Civ. R. 56.1(a). Plaintiff submitted Responsive SMFs to Defendants' SMFs. (*See* ECF Nos. 562, 567.) In the Responsive SMFs, Plaintiff did not cite to exhibits and other documents that were submitted in connection with the motion as required by Local Rule 56.1; Plaintiff also did not cite to materials in the record as required under Federal Rule of Civil Procedure 56(c)(1)(a). *See* L. Civ. R. 56.1(a); Fed. R. Civ. P. 56(c)(1). Instead, Plaintiff improperly cited to conjectural exhibits denoted by asterisks "**." (*See* ECF Nos. 562, 567.) Plaintiff did, however, properly cite to two affidavits which were signed and sworn by him and based on his own personal knowledge presumptively pursuant to Federal Rule of Civil Procedure 56(c)(1)(4), one entitled "Description of Defendants' Seven Administration Accounts" (the "First Affidavit"), and the other entitled "About [Robert]'s Final Administrator Account and State Court Proceedings" (the "Second Affidavit") (together with the First Affidavit, the "Affidavits"). (ECF Nos. 563, 564.) Despite leniency and multiple extensions, Plaintiff claims his responses are incomplete because he was unable to comply with the briefing schedule set forth by the Honorable Jessica Allen, U.S.M.J. (ECF Nos. 555, 557). Plaintiff further asserts he "include[d] as many exhibits in his responses as he [was] able. The missing but obtainable exhibits items [sic] will be notable [sic] in the Plaintiff's response documents by '**' rather than exhibit numbers." (ECF No. 555 at 2.) Plaintiff's citations to conjectural exhibits will not be considered by the Court. Plaintiff's *pro se* status does not excuse Plaintiff from complying with the applicable Federal Rules of Civil Procedure and Local Rules. *See Bello v. Romeo*, 424 F. App'x 130, 133 (3d Cir. 2011) (noting pro se litigants are required to comply with the summary judgment procedures outlined in Federal Rule of Civil Procedure 56 (citing *Zilich v. Lucht*, 981 F.2d 694, 696 (3d Cir. 1992))). However, the Court will consider Plaintiff's affidavits as the Third Circuit has noted "even pro se litigants generally must at least submit an affidavit to avoid summary judgment." *Morrison v. Rochlin*, 778 F. App'x 151, 155 n.5 (3d Cir. 2019) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 249 (3d Cir. 2013). The Affidavits appear to be Plaintiff's narrative of the facts at issue. (*See* ECF Nos. 563, 564.) The Court carefully reviewed the Affidavits.

Livingston Police Department. (ECF No. 530-2 ¶ 2; ECF No. 532-2 ¶ 2; ECF No. 562 ¶ 2; ECF No. 567 ¶ 2.) Thereafter, Robert retained the Wilentz Defendants as counsel and commenced the process of becoming administrator of the Yanz Estate. (ECF No. 530-2 ¶ 3; ECF No. 532-2 ¶ 3; ECF No. 562 ¶ 3; ECF No. 567 ¶ 3.) On February 10, 2014, Robert applied to the Essex County Surrogate's Court (the "Surrogate's Court") for permission to administer the Yanz Estate; thereafter, the Surrogate's Court authorized Robert to act as administrator of the Yanz Estate on February 19, 2014. (ECF No. 530-2 ¶ 4; ECF No. 532-2 ¶¶ 4–5; ECF No. 562 ¶ 4; ECF No. 567 ¶ 4.)

After being appointed administrator of the Yanz Estate, Robert began organizing and selling the personal property at Yanz's residence. (ECF No. 530-2 ¶ 5; ECF No. 532-2 ¶ 6.)[3] Robert sold Yanz's personal property to estate sale companies and deposited the proceeds into the Yanz Estate. (ECF No. 530-2 ¶ 6; ECF No. 532-2 ¶ 7.)[4] Specifically, Robert found guns at Yanz's residence and placed them in storage with a duly licensed gun dealer, the guns were eventually sold at auction, and the proceeds were deposited into the Yanz Estate. (ECF No. 530-2 ¶¶ 6–7; ECF No. 532-2 ¶¶ 7–8.)[5] Yanz's real property in Livingston, New Jersey was sold

---

[3] Plaintiff contends Robert "began removing and selling chattel[s] from the house prior to becoming administrator." (ECF No. 562 ¶ 6; ECF No. 567 ¶ 5.)

[4] Plaintiff disputes this fact, and states: "[t]he documents show that [Robert] made cash sales of Decedent's collectibles of over $144,000.00 in 2014 and eventually sold an unaccounted $160,000.00 (see affidavit '**' and Century 20 Antiques documents at ex**)." (ECF No. 562 ¶ 7; *see also* ECF No. 567 ¶ 6.)

[5] Plaintiff also disputes this fact, and states: (1) "[Robert] denied that there were any guns until Plaintiff and sister found a batch plain sight in the house on or about January 1, 2015. [Robert] had those 87 guns (Plaintiff disputes the numbers) in March 2015 and later sold all 87 to the evaluator (Defensive Security). He claimed on April 9, 2015, that the 87 guns were all decedent had (ECF 530-5 par 4). While this was happening, [Robert] had been selling guns for cash since February, [sic] 2015 to Century Antiques (C20A subpoena resp ex**) and kept the cash until later forced to admit it (see ECF 533 p.2 entries for 2/13/2015 to 7/31/2015) and consigning guns

through a realtor to an unrelated third-party purchaser for fair market value, and the net proceeds were deposited into the Yanz Estate. (ECF No. 530-2 ¶ 8; ECF No. 532-2 ¶ 9; ECF No. 562 ¶ 9; ECF No. 567 ¶ 8.)

Robert researched Yanz's ancestry and determined there were other relatives entitled to greater portions of the Yanz Estate. (ECF No. 530-2 ¶ 9; ECF No. 532-2 ¶ 10.)[6] Robert subsequently contacted these relatives and apprised them of his actions related to administering the Yanz Estate. (ECF No. 532-2 ¶ 10.) Specifically, Robert contacted Deborah Anglin ("Deborah"), Plaintiff's sister, to inform her that Yanz had passed away, and that she was entitled to a portion of the Yanz Estate. (ECF No. 530-2 ¶ 10.)[7] Robert informed Deborah that

---

to FSS company. These were concealed until Plaintiff's investigations reveled [sic] them and the dealers accounted. Records show that [Robert] had placed Guns on consignment with Griffin and How and concealed those until exposed in courts procedures in 2022 (ECF 532-11 p.19). [Robert] eventually sold over 400 guns and evidence shows that he still conceals more. [Robert] did not auction any of the guns that he has accounted for (see Plaintiff's gun reconciliation ex** for details)," (ECF No. 562 ¶ 8); and (2) "[Robert] has a checkered history of denying the decedent's guns and selling them for himself. He never sold any auction that he has accounted for. (see ex** JLA's gun reconciliation). There is evidence that several guns which [Robert] did not account for were sold at auction. Further, the records show that [Robert] sold guns to Century 20 Antiques for cash and did not deposit the proceeds into the account (see ex** gun reconc.; ECF 533-2 p2 dates 2/13/15 to 7/31/15; and c20a ex**). It is noted that there were chattel[s] at the house on January 1, 2015 when Plaintiff and his sister Karen Anglin were in the house." (ECF No. 567 ¶ 7).

[6] In response, Plaintiff contends "[Robert] knew all of his life about closer related Plaintiff and his sisters. [Robert] also knew his own uncle Richard Anglin who lived in the area of Islin, NJ. ([Robert] Affidavit ex**) Plaintiff and Deborah Anglin visited [Robert] and others in NJ in December 2012 and there were communications between the NJ Florida Families in 2013 (ECF 151). The Quinn Hoping funeral home records show a list of relatives which Police used to find Deborah Anglin. Closer relative Deborah Anglin was first called by Livingston police searching for Decedent's family on or about December 28, 2013 and she referred them to [Robert]. [Robert] called and spoke with Deborah Anglin on or about January 10, 2014. (see [Deborah] affidavits **, **, ** and ECF 151; [the First Affidavit] par 5–8]." (ECF No. 562 ¶ 10; ECF No. 567 ¶ 9.)

[7] Plaintiff disputes this fact, and states "[Robert] knew that Deborah Anglin was aware of the death when he phoned her in January, [sic] 2014. [Robert] called her again on or about

the Yanz Estate was represented by Leavitt-Gruberger. (ECF No. 530-2 ¶ 11; ECF No. 567 ¶ 11.) Deborah then relayed this information to Plaintiff. (ECF No. 530-2 ¶ 12; ECF No. 567 ¶ 12.)

       1.     <u>The Chancery Court Action</u>

On September 18, 2020, Robert, acting as the administrator of the Yanz Estate, filed a complaint before the Superior Court of New Jersey, Chancery Division, Probate Part, Essex County (the "Chancery Court") in order to settle the Yanz Estate. (ECF No. 530-2 ¶ 22; ECF No. 532-2 ¶ 19; ECF No. 562 ¶ 19; ECF No. 567 ¶ 22.) A proposed final accounting prepared by Topche and Company LLC was attached as an exhibit to the complaint. (*Id.*) On November 12, 2021, the Chancery Court filed a consent order wherein the parties—Plaintiff, Robert, and Deborah—stipulated to all of the outstanding exceptions to the proposed final accounting raised by Plaintiff and Deborah. (ECF No. 530-2 ¶ 23; ECF No. 532-2 ¶ 20; ECF No. 562 ¶ 20; ECF No. 567 ¶ 23.)

On January 14, 2022, Robert filed a partial summary judgment motion seeking to omit a majority of the outstanding exceptions that were listed in the November 12, 2021 consent order. (ECF No. 530-2 ¶ 24; ECF No. 532-2 ¶ 21; ECF No. 562 ¶ 21; ECF No. 567 ¶ 24.) On April 22, 2022, the Chancery Court filed another consent order which provided that the parties "agree and stipulate that certain Exceptions raised by [Plaintiff] and/or Deborah Anglin shall be dismissed." (ECF No. 530-2 ¶ 25; ECF No. 567 ¶ 25.) On April 27, 2022, the Chancery Court issued an Order addressing Robert's partial summary judgment motion and identifying the exceptions remaining for trial. (ECF No. 530-2 ¶ 26; ECF No. 532-2 ¶ 22; ECF No. 562 ¶ 22; ECF No. 567 ¶ 26.) After a two-day trial, the Chancery Court issued a judgment on June 28, 2022 and an

---

December 19, 2014 to inform her of the existence of an estate and attempt to settle the estate for $500,000.0 [sic] for all four of the closer related heirs who lived in Florida ([Deborah] aff. Ex**, P.A. 1)." (ECF No. 567 ¶ 10.)

amended judgment on June 30, 2022, which approved the final accounting and supplemental accounting submitted by Robert and resolved the remaining exceptions. (ECF No. 530-2 ¶ 27 (citing Robert Anglin Certification, Ex. F); ECF No. 532-2 ¶ 23.) On March 10, 2023, the Chancery Court issued a second amended judgment to require Robert to reimburse the Yanz Estate for all fees paid to his counsel for the action filed in federal court. (ECF No. 532-2 ¶ 28 (citing Christopher Kelly, Esq. Certification, Ex. F).)

### 2.   June 16, 2022 Deposition of Plaintiff

On June 16, 2022, Plaintiff was deposed by the Wilentz Defendants' counsel (the "June 2022 Deposition"). (ECF No. 530-2 ¶ 28; ECF No. 567 ¶ 28.)[8] During the June 2022 Deposition, Plaintiff acknowledged he had produced a document in discovery that detailed his criminal history in Florida. (ECF No. 530–2 ¶ 29 (citing June 2022 Dep. Tr. 28:5–29:17); ECF No. 567 ¶ 29.)[9] Additionally, Plaintiff conceded the following: (a) Plaintiff's criminal history includes three arrests, two of which were for stalking "vindictive women" (ECF No. 530-2 ¶ 30 (citing June 2022 Dep. Tr. 20:11–32:22); ECF No. 567 ¶ 30); (b) Plaintiff's arrest record is publicly available (*id.*); (c) some of the assets that he had previously asserted were missing from the Yanz Estate were eventually included in the Yanz Estate's accounting (ECF No. 530-2 ¶ 30; June 2022

---

[8] Plaintiff objects to the Court's consideration of the June 2022 Deposition transcript. (*See* ECF No. 556.) In his Responsive SMF, Plaintiff submits "[the June 16, 2022 deposition transcript] has been requested for cause to be removed from the record and from use as evidence. Many errors are in the transcript which the Plaintiff was not given rightful opportunity to correct. Recent filing requests removal for cause. Additionally, the deposition was regularly interrupted by injections [sic] from [the Anglin Defendants' counsel] and not strictly the domain of [the Wilentz Defendants counsel." (ECF No. 567 ¶ 28.) The Court will address Plaintiff's objection in a separate section below.

[9] Plaintiff agrees to this fact with an objection that "[a]rrest and dismissal is [sic] not by public regard a criminal history." (ECF No. 567 ¶ 29.)

Dep. Tr. 177:16–20, 179:22–180:1, 180:16–23).[10]

### 3.  November 17, 2022 Deposition of Plaintiff

On November 17, 2022, Plaintiff was deposed by the Wilentz Defendants' counsel and the Anglin Defendants' counsel (the "November 2022 Deposition"). (ECF No. 530-2 ¶ 31; ECF No. 532-2 ¶ 24; ECF No. 562 ¶ 24; ECF No. 567 ¶ 31.)[11] During the November 2022 Deposition, Plaintiff reviewed and acknowledged the following documents related to the Chancery Court proceedings: (a) the November 12, 2021 consent order listing Plaintiff and Deborah's exceptions to the accounting of the Yanz Estate (ECF No. 530-2 ¶ 32, ECF No. 532-2 ¶ 25 (citing November 2022 Dep. Tr. 42:10–43:4); ECF No. 562 ¶ 25; ECF No. 567 ¶ 32); (b) Robert's partial summary judgment motion seeking to omit a majority of the outstanding exceptions (ECF No. 530-2 ¶ 32, ECF No. 532-2 ¶ 25 (citing November 2022 Dep. Tr. 43:12–44:21); ECF No. 562 ¶ 25; ECF No. 567 ¶ 32); (c) the April 22, 2022 consent order and the April 27, 2022 summary judgment order established which exceptions remained for trial (ECF No. 530-2 ¶ 32, ECF No. 532-2 ¶ 25 (citing November 2022 Dep. Tr. 45:11–52:2); ECF No. 562 ¶ 25; ECF No. 567 ¶ 32); (d) the June 28, 2022 Judgment accepted the representations of the final and supplemental accounting submitted by Robert, struck some of Plaintiff's exceptions, and noted that Plaintiff and Deborah dismissed their remaining exceptions "at or before trial" (ECF

---

[10] Plaintiff disputes the Wilentz Defendants' interpretation of the June 2022 Deposition transcript, and contends: "a. Agreed in part. Any arrest over ten years is not usable in court. b. Agreed ti [sic] the extent that two arrest are [sic]. . . . [c]. Disagreed. The deposition did not discuss all of the assets that Plaintiff contends were missing or are missing. There were seven accounts over the time of the administration which increased as Defendant's [sic] realized that the assets were discovered by Plaintiff. There has been almost $100,000.0 [sic] added to the estate after the June 16, 2022, deposition due to Plaintiff's litigations in the state court hearing." (ECF No. 567 ¶ 30.)

[11] Plaintiff also objects to the Court's consideration of the November 2022 Deposition transcript. (*See* ECF No. 556.)

No. 530-2 ¶ 32, ECF No. 532-2 ¶ 25 (citing November 2022 Dep. Tr. 53:3–59:12); ECF No. 562 ¶ 25; ECF No. 567 ¶ 32); and (e) the first, final, and supplemental accounting of the Yanz Estate that are all mentioned in the Chancery Court's judgment (ECF No. 530-2 ¶ 32, ECF No. 532-2 ¶ 25 (citing November 2022 Dep. Tr. 53:18–54:11); ECF No. 562 ¶ 25; ECF No. 567 ¶ 32).[12] Plaintiff also acknowledged the Chancery Court conducted a two-day trial wherein he was given an opportunity to: direct and cross-examine witnesses; and present evidence to establish the basis for his exceptions to the accounting of the Yanz Estate. (ECF No. 530-2 ¶ 34; ECF No. 532-2 ¶ 27; ECF No. 562 ¶ 27; ECF No. 567 ¶ 34.)

Further, Plaintiff conceded the following: (a) Joanne Konsoulis ("Konsoulis"), who at the time worked as a probate assistant at the Surrogate's Court Clerk's Office, did not specifically state that Leavitt-Gruberger told her Plaintiff had a criminal history (ECF No. 530-2 ¶ 33 (citing November 2022 Dep. Tr. 76:17–77:1); ECF No. 567 ¶ 33); (b) Plaintiff did not take contemporaneous notes of his alleged conversation, nor did he record it (ECF No. 530-2 ¶ 33 (citing November 2022 Dep. Tr. 68:2–69:25, 71:7–10); ECF No. 567 ¶ 33); and (c) Plaintiff has been arrested three times (ECF No. 530-2 ¶ 33 (citing November 2022 Dep. Tr. 68:2–69:25, 71:7–10, 79:5–10); ECF No. 567 ¶ 33).[13] Plaintiff repeatedly acknowledged that the underlying basis for his causes of action against the Anglin Defendants is that Plaintiff believes the assets of the Yanz Estate were unlawfully removed by Defendants. (ECF No. 532-2 ¶ 26 (citing November 2022 Dep. Tr. 11:21–12:4, 17:25–18:21, 19:7–20:13, 27:4–10, 30:10–14, 31:21–32:15); ECF No. 562 ¶ 26.)

---

[12] In response to (e), Plaintiff submits "[f]urther court action on exceptions took place after the judgment to allow the account had been produced and amended on June 30, 2022. This resulted in over $90,000.00 being added into the estate (Please see [the Second Affidavit])." (ECF No. 562 ¶ 25.)

[13] Plaintiff submits "only two [of the arrests] are usible [sic] in court." (ECF No. 567 ¶ 33.)

**B.      Procedural History**

On October 30, 2015, Plaintiff filed the original complaint in the United States District Court for the District of Northern Florida. (ECF No. 1.) On January 19, 2016, Plaintiff filed the first amended complaint. (ECF No. 8.) The Chief Judge of the District of Northern Florida thereafter entered an order that adopted a magistrate judge's report and recommendation to transfer the matter to this District on July 5, 2016. (ECF No. 18.) On July 6, 2016, the case was assigned to the Honorable Esther Salas, U.S.D.J.

Plaintiff initially filed multiple "proposed" second amended complaints, and eventually Plaintiff filed an operative, second amended complaint (the "SAC") on January 31, 2017. (ECF No. 65.) Defendants filed motions to dismiss the SAC. (ECF Nos. 77, 81.) After multiple extensions to the briefing deadlines, Judge Salas issued a memorandum and order on March 12, 2018, which granted in part and denied in part Defendants' motions to dismiss the SAC. (ECF Nos. 120, 121.) Judge Salas dismissed three counts with prejudice, dismissed multiple counts without prejudice, and denied multiple portions of the Defendants' motions to dismiss. (*See id.*)

Pursuant to Judge Salas's March 12, 2018 order, Plaintiff filed the TAC on May 10, 2018. (ECF No. 125.) The TAC raises the following thirteen claims[14]: breach of fiduciary duty against Robert (Count II); fraud against Robert (Count III); conversion against Robert (Count IV); embezzlement against Robert (Count V); unjust enrichment against Robert (Count VI); defamation against Robert and Leavitt-Gruberger (Count VII); aiding and abetting against Leavitt-Gruberger (Count VIII); respondeat superior against WGS (Count X); aiding and abetting against Christan (Count XI); concealment against Robert (Count XII); conspiracy to commit fraud against Defendants (Count XIV); civil rights violations against Robert (Count

---

[14] Plaintiff did not renumber the claims following the dismissal of claims. (*See generally id.*)

XV); spoliation of evidence against Robert (Count XIX)[15]. (ECF No. 125.) The Wilentz Defendants filed their Answer to the TAC on June 27, 2018. (ECF No. 131.) On the same date, the Anglin Defendants filed their Answer. (ECF No. 132.)

Thereafter, on May 22, 2019, the Anglin Defendants filed a Motion to Stay this action pending the closure of the Yanz Estate by the Chancery Court. (ECF No. 231.) On October 16, 2019, the Honorable Joseph A. Dickson, U.S.M.J. (Ret.) granted the Anglin Defendants' Motion to Stay. (ECF No. 269.) Judge Dickson held "[a] stay would permit Plaintiff to obtain (and challenge as necessary), the final accounting of that estate, which would obviously inform his claims in this case and allow for a targeted conclusion of discovery in this matter." (*Id.* at 5.)

On July 27, 2020, this matter was reassigned to the undersigned. (ECF No. 301.) On August 28, 2020, Judge Dickson vacated the stay of this action. (ECF No. 305.) Upon the retirement of Judge Dickson, the Honorable Jessica S. Allen, U.S.M.J. was assigned to the matter on February 19, 2021.

After multiple years of discovery, which included many discovery disputes related to issues including subpoenas and the scheduling of Plaintiff's depositions, on May 25, 2023, Judge Allen ordered that "[a]ny Party who intends to move for summary judgment, pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, shall file their moving papers on or before June 30, 2023." (ECF No. 491 at 7.) Judge Allen granted four separate adjournment requests from the Parties and ultimately the filing deadline for summary judgment motions was extended to November 1, 2023. (*See* ECF Nos. 497, 499, 508, 509, 516, 517, 521, 523.) The final letter order extending the filing deadline was dated September 29, 2023, and ordered the following: "Opposition papers, if any, shall be filed and served by December 1, 2023. Reply papers, if any,

---

[15] Plaintiff used the incorrect roman numerals for nineteen. (*See id.* at 68.)

shall be filed and served by December 15, 2023. There shall be no further extensions of these deadlines." (ECF No. 523.)

On October 31, 2023, the Wilentz Defendants filed their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 530.) On November 1, 2023, the Anglin Defendants filed their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 532.) By letters dated October 31, 2023 and November 3, 2023, Plaintiff requested another adjournment of the filing deadline for his summary judgment motion. (ECF Nos. 534, 536.) By text order dated November 7, 2023, Judge Allen denied Plaintiff's request for a further extension of the deadline to file a motion for summary judgment "to ensure proper case management and efficiency." (ECF No. 539.) Judge Allen noted that the Court had "granted the parties' respective requests to extend the deadline several times," and that the Court "possesses broad discretion in matters related to scheduling and case management, including the time of motion practice." (*Id.*)

Thereafter, Plaintiff requested an adjournment of the deadline for opposition papers by letter dated November 21, 2023. (ECF No. 543.) Judge Allen granted Plaintiff's request in part by extending the deadline for opposition papers to on or before December 20, 2023, and noted "[t]here shall be no further extensions of these deadlines." (ECF No. 546.) On December 18, 2023, Plaintiff requested another adjournment of the deadline for opposition papers. (ECF No. 553.) On the following day, Judge Allen granted Plaintiff's adjournment despite the previous warning to Plaintiff because of "Plaintiff's religious observances," but Plaintiff was again "cautioned that there will be no further extensions of this deadline." (ECF No. 554.) Judge Allen ordered that "Plaintiff shall file and serve his opposition papers on or before 1/2/24. . . . Reply papers, if any, shall be filed and served on or before 1/23/24." (*Id.*)

12

From January 2, 2023 to January 3, 2023, Plaintiff filed ten separate submissions related to Defendants' summary judgment motions. (ECF Nos. 555–57, 560–65, 567.) First, Plaintiff filed a letter which was an "[e]mergent [r]equest for time to complete exhibits and file further undisputed facts or counter motion." (ECF No. 555.) The second letter was entitled "Plaintiff'[s] Emergent Request to [S]trike Certain of Defendants' Evidence From Summary Judgment Motion and Trial." (ECF No. 556.) Plaintiff filed letters which stated his responses to Defendants' Motions were "incomplete."[16] (ECF No. 557, 560, 561.) In separate filings, Plaintiff submitted Responsive SMFs to Defendants' SMFs. (ECF Nos. 562, 567.) Plaintiff also filed the Affidavits, which are essentially his narrative of the facts at issue. (ECF Nos. 563, 564.) Finally, Plaintiff filed a letter in response to, as he put it, Defendants' arguments "that the claims concerning taxes for the estate should be dismissed because the plaintiff was unable [to] hire expert witnesses." (ECF No. 565.) Plaintiff stated: "two of the witnesses whom he will call at trial were the accountants who worked on tax returns for the decedent and the estate and produced the estate's 'final account.' They are material witnesses who can provide testimony on taxes." (*Id.*)

On January 5, 2024, the Court issued a text order which provided that "[a]lthough there were filings submitted after the January 2, 2024 deadline for opposition papers, the Court will consider these filings in its review of the pending summary judgment motions." (ECF No. 571.) The Court further ordered that "no further letters or supplemental filings may be filed as to the summary judgment motions except Defendants reply papers, which shall be filed and served on or before January 23, 2024." (*Id.*) Thereafter, Defendants filed their respective replies. (ECF Nos. 573, 574.) On January 25, 2024, Plaintiff requested leave to file a sur-reply. (ECF No. 576.)

---

[16] Plaintiff filed a "[c]orrected" version of ECF No. 557. (ECF No. 560.)

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." L. Civ. R. 56.1(a). A party asserting a genuine dispute of material fact must support the assertion by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A factual dispute "is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019) (citations omitted). Irrelevant or unnecessary factual disputes will also not preclude a grant of summary judgment. *See Anderson*, 477 U.S. at 248. Moreover, "mere speculation does not create genuine issues of material fact." *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 215–16 (3d Cir. 2011) (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990)).

The party moving for summary judgment has the initial burden of showing the basis for

14

its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a movant adequately supports its summary judgment motion, the burden shifts to the nonmovant to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (quoting *Anderson*, 477 U.S. at 255). In other words, in deciding a party's summary judgment motion, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 255. "Summary judgment is appropriate only when there are no genuine issues of material fact, drawing all justifiable inferences in favor of the nonmovant." *Adams v. Fayette Home Care & Hospice*, 452 F. App'x 137, 139 (3d Cir. 2011) (citing *Anderson,* 477 U.S. at 248, 255).

If the moving party bears the burden of proof at trial, summary judgment is not appropriate if the evidence is susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the non-moving party bears the burden of proof at trial, "summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (alteration in original) (quoting *Celotex Corp.*,

477 U.S. at 322). A "genuine issue as to any material fact" cannot exist if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

## III. DECISION

Before reaching the merits of the summary judgment motions, the Court will address Plaintiff's letter request to "strike [c]ertain of Defendants' [e]vidence." (ECF No. 556.) Next, the Court addresses the Parties' arguments related to the substance of Defendants' summary judgment motions. Defendants assert Plaintiff is collaterally estopped from pursuing his claims premised upon Robert's improper and fraudulent administration of the Yanz Estate. The Anglin Defendants move for summary judgment on Plaintiff's claims for breach of fiduciary duty (Count II), fraud (Count III), conversion (Count IV), embezzlement (Count V), unjust enrichment (Count VI), defamation (Count VII), aiding and abetting (Count XI), concealment (Count XII), conspiracy to commit fraud (Count XIV), civil rights violations (Count XV), and spoliation of evidence (Count XIX). The Wilentz Defendants move for summary judgment on Plaintiff's claims for defamation (Count VII), aiding and abetting (Count VIII), respondeat superior (Count X), and conspiracy to commit fraud (Count XIV). In opposition to the substance of Defendants' arguments, Plaintiff primarily relies upon the Affidavits. (ECF Nos. 563, 564.)

A.    **Plaintiff's Request to Strike Evidence**

Plaintiff asserts the Court should not consider: (1) a certification completed by Christopher A. Kelly, Esq., the attorney who represented Robert in his capacity as administrator of the Yanz Estate before the Chancery Court; and, as noted above, (2) the transcripts of the June 2022 and the November 2022 depositions.[17] (*See id.*) The Court addresses each in turn.

1.    Mr. Kelly's Certification

Plaintiff raises conclusory arguments that the Court should not consider Mr. Kelly's certification because: (a) "Mr. Kelly quite boldly misrepresented the results of the relevant state court proceedings . . . and Plaintiff's actions in the proceedings"; (b) "Mr. Kelly is not a witness in the matters this case" and "[h]e is not listed by Defendants as a witness or as an expert witness," therefore "Mr. Kelly's testimony is precluded from trial"; (c) there are "legal errors" in Mr. Kelly's certification and exhibits which Defendants utilize as support for their arguments that some of Plaintiff's claims are precluded; and (d) "Attorney Kelly falsely alleges several other misrepresentations concerning the torts against Defendants which he intended as support to false allegations now used by the Defense." (ECF No. 556 at 1–2.) The Anglin Defendants oppose Plaintiff's request. (ECF No. 558 (citing Fed. R. Civ. P. 56(c)(4)).) Plaintiff filed a reply brief not permitted by the Court (*see* ECF No. 568), however, the Court considered Plaintiff's assertions. Plaintiff argues the Anglin Defendants make several misrepresentations in their response to his request. (ECF No. 568 at 1–2.)

Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the

_____

[17] Defendants filed responses to these requests (ECF Nos. 558, 559), and Plaintiff filed another letter in reply to Defendants' arguments (ECF No. 568).

matters stated." Here, Mr. Kelly certified that: he represented Robert in his capacity as administrator of the Yanz Estate; the certification was completed based on his personal knowledge of the facts and documents; and the statements were true. (ECF No. 532-10 ¶¶ 1, 18.) Further, as the Anglin Defendants submit: "Mr. Kelly commenced the [Chancery Court] action, engaged in all applicable discovery and motion practice, and the trial counsel for the Accounting before that tribunal. The attachments to Mr. Kelly's certification are court documents for a matter he personally litigated." (ECF No. 558 at 1–2.) The Court also notes Plaintiff has failed to cite to any case law to support his request that the Court strike Mr. Kelly's certification. (*See* ECF No. 556.) Although the Court is sympathetic to Plaintiff's *pro se* status, "[i]t is not the Court's job to make [a *pro se*] Plaintiff's arguments for [him or] her." *Williams v. Davidson*, Civ. A. No. 16-8339, 2020 WL 3567315, at *2 n.4 (D.N.J. July 1, 2020) (citing *Davila v. Commonwealth of PA*, Civ. A. No. 11-1092, 2016 WL 873237, at *7 (M.D. Pa. Jan. 20, 2016), *report and recommendation adopted*, 2016 WL 861884 (M.D. Pa. Mar. 7, 2016)). Mr. Kelly's certification substantially complies with Federal Rule of Civil Procedure 56(c)(4), and the Court is satisfied that he is competent to testify on the matters stated in his certification as he was the attorney who represented Robert during the Chancery Court Action. Accordingly, Plaintiff's letter request to "strike" Mr. Kelly's certification is **DENIED**.

2.     Transcripts of the June 2022 and the November 2022 Depositions

Plaintiff asserts the transcripts of the June 2022 and the November 2022 Depositions should be stricken because: Defendants have misrepresented that the deposition transcripts have been "verified, accurate, agreed to by Plaintiff, stipulated, and 'duly attested'"; the Wilentz Defendants' counsel who attests to the authenticity of the transcript was not at the depositions; "[t]he Defense did not follow rules or proper procedure to attest or verify or solicit Plaintiff's

agreement or allow him to review and correct as required in Rule 30"; "[t]here are several mistakes or apparent misunderstandings in each of the two depositions [sic] transcriptions"; and "[t]he June 16, 2022 deposition was a complete harassment of the Plaintiff and resulted in him filing report concerning Defendant's malicious abuse of process." (ECF No. 556 at 3.) Specifically, Plaintiff argues Defendants did not comply with Federal Rule of Civil Procedure 30 because he was not given an opportunity to review the transcript and make corrections after the deposition or even "prior to Defense filing of their summary judgment motions." (*Id.* at 4–5.) Plaintiff further contends he did not sign the transcripts. (*Id.*) Specifically, Plaintiff submits he "has never before seen the 'errata sheet' for the [November 2022 Deposition transcript] . . . or the 'Acknowledgment of Deponent' [for the June 2022 Deposition transcript]." (*Id.*) Plaintiff asserts "[i]mportantly, it is noted that the two transcripts appear to be only part of the deposition dialogues. . . . The minutes /page for the two relevant transcripts are dramatically higher than your average hearing transcript. This indicates that there is dialogue that is missing from the transcripts." Finally, Plaintiff contends "[i]t is apparent that the transcriber for the [June 2022 Deposition] was biased."[18]

In opposition to Plaintiff's request, the Anglin Defendants provide a duly certified copy of the November 2022 Deposition transcript. (*See* ECF No. 558-1.) The Anglin Defendants submit "[t]he only difference between the attached transcript and the transcript erroneously included in [the Anglin Defendants'] summary judgment filing is the 'Reporter's Certificate' confirming the truth of the transcript." (ECF No. 558 at 1.) The Wilentz Defendants also oppose Plaintiff's request and assert "Plaintiff received an email on July 4, 2022 providing him a copy of the transcript that he claims he did not receive, at the same email address Plaintiff has on file

---

[18] The Court declines to address the arguments raised by Plaintiff which are unsupported and wholly devoid of merit.

with the District." (ECF No. 559 (citing ECF No. 530-3).)

Federal Rule of Civil Procedure 30(f)(1) provides that an "officer must certify in writing that the witness was duly sworn and that the deposition accurately records the witness's testimony." Fed. Civ. P. 30(f)(1). Here, both transcripts at issue contain a "Certificate of Oath" and a "Certificate of Reporter" or "Reporter's Certificate." (ECF No. 530-3 at 190, 505; ECF No. 558-1 at 168.) The transcript of the June 2022 Deposition includes a Certificate of Oath signed and completed by April Goldberg, a professional reporter and notary public of the State of Florida. (ECF No. 530-3 at 190.) Ms. Goldberg certifies that the transcript is "a true and complete record of [her] stenographic notes." (*Id.* at 191.) Similarly, the transcript of the November 2022 Deposition includes a Certificate of Oath signed and completed by Alexandra Renee Cuellar, a court reporter and notary public of the State of Florida. (ECF No. 530-3 at 505; ECF No. 558-1 at 168.) Ms. Campbell certifies that the transcript "is a true and correct transcription of my notes of the proceedings." (ECF No. 530-3 at 506; ECF No. 558-1 at 169.) Therefore, the Court finds the June 2022 and the November 2022 Deposition transcripts comply with Rule 30(f)(1).

Rule 30(e) provides in relevant part:

> (1) *Review; Statement of Changes*. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>
> (A) to review the transcript or recording; and
>
> (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

Fed. R. Civ. P. 30(e)(1) (emphasis in original).[19] Although Plaintiff asserts Defendants violated Rule 30 by failing to provide him a copy of the deposition transcript, "Rule 30(e)(1) by its terms does not state that an opposing party is prohibited from introducing unreviewed deposition testimony in a summary judgment motion." *M.R. v. Rispole*, Civ. A. No. 22-756, 2024 WL 1655383, at *6 (N.D.N.Y. Apr. 17, 2024); *see also Tycoons Worldwide Grp. (Thailand) Pub. Co. v. JBL Supply Inc.*, 721 F. Supp. 2d 194, 200 (S.D.N.Y. 2010) ("[I]t is not clear that plaintiff violated Rule 30(e)(1) by failing to provide [defendant] a copy with the deposition transcript before submitting excerpts from that transcript to the Court with its summary judgment motion. Rule 30(e)(1) by its terms does not state that the deponent must be given an opportunity to review and correct the transcript before a party submits that transcript to the Court in support of a summary judgment motion.") Further, the Court is not persuaded by Plaintiff's argument that he did not sign the "Errata Sheet" for the June 2022 Deposition (ECF No. 530-3 at 192), or the "Acknowledgment of Deponent" for the October 2022 Deposition (ECF No. 530-3 at 503; ECF No. 558-1 at 166) because Plaintiff has not established the transcripts are inaccurate. *See PNC Equip. Fin. v. Mariani*, 758 F. App'x 384, 388 (6th Cir. 2018) ("The Sixth Circuit has repeatedly held that a district court does not abuse its discretion by admitting an unsigned deposition transcript unless the party opposing the transcript shows that the transcript contained inaccuracies or that she was otherwise prejudiced by its introduction.").[20] Despite these raised

---

[19] Plaintiff cites to Federal Rule of Civil Procedure 30(f)(2)(A), and asserts "Defendants are required to allow the deponent to review the transcript and make corrections." (ECF No. 556 at 4.) However, Rule 30(f)(2)(A) provides that "[d]ocument and tangible things produced for inspection during a deposition must, on a party's request, be marked for identification and attached to the deposition." It appears Plaintiff actually relies on Rule 30(e)(1) for his argument that he should have been given an opportunity to review the transcript.

[20] The Third Circuit has not addressed whether a district court is permitted to review an unsigned deposition transcript in ruling on a summary judgment motion.

issues, Plaintiff has again failed to cite to any case law to support his extreme request to strike deposition transcripts. *See Williams v. Davidson*, 2020 WL 3567315, at *2 n.4. Therefore, Plaintiff's letter request to strike the June 2022 Deposition and November 2022 Deposition transcripts is **DENIED**.

### B.    Plaintiff's Request to File a Sur-Reply

In the District of New Jersey, a sur-reply can be filed only with leave of the Court and at the Court's discretion. L. Civ. R. 7.1(d)(6). A sur-reply brief may be permitted by the Court to respond to new arguments raised in the reply brief, "or explain a position in the initial brief that the respondent refuted." *Smithkline Beecham PLC v. Teva Pharm. U.S., Inc.*, Civ. A. Nos. 04-0215, 05-0536, 2007 WL 1827208, at *1 (D.N.J. June 22, 2007) (citing cases); *see also Delrio-Mocci v. Connolly Props.*, Civ. A. No. 08-2753, 2009 WL 2989537, at *3, 2009 (D.N.J. Sep. 16, 2009) (finding a sur-reply was unnecessary because the defendant's reply brief did not raise any new arguments nor contain any statements requiring correction or further explanation).

Here, Defendants' reply briefs are appropriately responsive to the issues raised in Plaintiff's submissions. Indeed, in Plaintiff's January 25, 2024, letter requesting a sur-reply, Plaintiff asserts "[t]he defense's replies repeat the same omissions and misrepresentations of related proceedings that are found in their motions which contradict law and the facts." (ECF No. 576 at 1.) The Court finds that the conditions warranting a sur-reply have not been met.[21] Based on the foregoing, Plaintiff's letter request for leave to file a sur-reply is **DENIED**.

---

[21] The Court also notes that Judge Allen twice extended the deadline for Plaintiff's oppositions. (ECF Nos. 546, 554.) Even though Plaintiff filed submissions past Judge Allen's final deadline, the Court still considered each and every submission. Further, on January 5, 2024, the Court ordered that "no further letters or supplemental filings may be filed as to the summary judgment motions except Defendants['] reply papers." (ECF No. 571.)

C.      **Collateral Estoppel**

The Wilentz Defendants assert Plaintiff is collaterally estopped from challenging the Chancery Court action or the disposition of assets which serve as the basis for his claims against the Anglin Defendants, and therefore Plaintiff cannot establish an underlying tort on which to base an aiding and abetting claim against Leavitt-Gruberger.[22] (ECF No. 530-1 at 23–26.) The Anglin Defendants submit Plaintiff is collaterally estopped by the judgment issued by the Chancery Court, and therefore, Plaintiff's claims premised upon unaccounted for assets in the Yanz Estate are precluded. (ECF No. 532-1 at 9–13.)

In opposition, Plaintiff asserts Defendants' arguments as to collateral estoppel are misguided because the June 28, 2022 judgment issued by the Chancery Court was amended on June 30, 2022 and March 10, 2023. (ECF No. 556 at 2.) Plaintiff further submits Defendants' "claim iof [sic] preclusion is otherwise made false by NJRS 3B:17-8." (*Id.*) In a different submission, Plaintiff also argues "[t]he state court case and the estate remain open at this time. Even if the matter otherwise met the qualifications for preclusion (which it does not), the timing does not allow preclusion." (ECF No. 564 at 10.) Next, Plaintiff contends "[p]reclusion requires a prior case which is not current here. The precluded issue must be identical in each case, which is not the circumstance here." (*Id.* at 28–29.)

New Jersey preclusion law applies because federal courts "apply the general rule that the preclusive effect of a judgment is determined by the preclusion law of the issuing court." *Paramount Aviation Corp. v. August*, 178 F.3d 132, 135 (3d Cir. 1999); *see also Grimes v. Vitalink Commc'ns*, 17 F.3d 1553, 1562 (3d Cir. 1994) ("[A] subsequent federal court . . . look[s] to state law to determine whether issue preclusion is a necessary consequence of the prior state

---

[22] The Court will address Plaintiff's aiding and abetting claim below.

court litigation.") Under New Jersey law,

> [c]ollateral estoppel may apply if the party asserting the bar
> demonstrates that: (1) the issue to be precluded is identical to the
> issue decided in the first proceeding; (2) the issue was actually
> litigated in the prior action, that is, there was a full and fair
> opportunity to litigate the issue in the prior proceeding; (3) a final
> judgment on the merits was issued in the prior proceeding; (4)
> determination of the issue was essential to the prior judgment; and
> (5) the party against whom issue preclusion is asserted was a party
> to or in privity with a party to the prior proceeding.

*Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 204 (3d Cir. 2004) (quoting *Pace v. Kuchinsky*,

789 A.2d 162, 171 (2002)) (alteration in original).

Regarding the first prong, both the Chancery Court action and this matter require a

determination of Robert's accounting of the Yanz Estate. The Chancery Court accepted Robert's

accounting, whereas here, Plaintiff now challenges Robert's administration of the Estate.

Therefore, to the extent Plaintiff claims Robert's accounting was improper and fraudulent, this

issue is identical to the accounting of the Yanz Estate which was accepted and approved by the

Chancery Court.

As to the second prong, Plaintiff was presented with a full and fair opportunity to litigate

the issue of Robert's accounting during the Chancery Court action. Indeed, Plaintiff participated

throughout the Chancery Court action. It is undisputed Plaintiff filed objections to Robert's

accounting, served interrogatories, executed consent orders, and participated in the two-day trial.

The Court therefore finds Plaintiff had a full and fair opportunity to litigate the accounting of the

Yanz Estate.

The third prong is met because the Chancery Court has issued a final judgment on the

merits of the accounting. Although the Chancery Court has issued amended judgments, the

Chancery Court has not overturned its approval of Robert's accounting of the Yanz Estate. The

Chancery Court's judgments approved the itemized first and final accounting as well as the supplemental accounting. (*See* ECF No. 530-3 at 569.) Indeed, the second amended judgment provides that "[t]he account stated in the First and Final Account (J-1) and the Supplemental Accounting (P-1) are approved as stated therein." (ECF No. 574-3 at 5.) As Defendants note, Plaintiff did not file a notice of appeal within 45 days of the Chancery Court's judgments, as required under New Jersey Court Rule 2:4-1. Further, Plaintiff's reliance on N.J.S.A. 3B:17-8 is not persuasive. This statute provides as follows:

> A judgment allowing an account, including a guardian's intermediate account, after due notice, shall be res adjudicata[23] as to all exceptions which could or might have been taken to the account, and shall constitute an approval of the correctness and propriety of the account, the legality and propriety of the investments and other assets, the legality and propriety of the changes in investments or other assets, and the legality and propriety of other matters, and also shall exonerate and discharge the fiduciary from all claims of all interested parties and of those in privity with or represented by interested parties except:
>
> a. For the investments and other assets in the fiduciary's hands at the close of the period covered by the account, and assets which may come into his hands after the close of the account;
>
> b. Insofar as exceptions to the account shall be taken and sustained; and
>
> c. As relief may be had from a judgment in any civil action.

---

[23] Res judicata "contemplates that when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation." *Culver v. Ins. Co. of N. Am.*, 559 A.2d 400, 404 (N.J. 1989) (quoting *Lubliner v. Bd. of Alcoholic Beverage Control*, 165 A.2d 163, 167 (N.J. 1960)). Application of this doctrine "requires substantially similar or identical causes of action and issues, parties, and relief sought." *Id.* at 405 (citations omitted). "[F]or res judicata to apply, there must be (1) a final judgment by a court of competent jurisdiction, (2) identity of issues, (3) identity of parties, and (4) identity of the cause of action." *Brookshire Equities, LLC v. Montaquiza*, 787 A.2d 942, 947 (N.J. Super. Ct. App. Div. 2002) (citations omitted). "For the purposes of res judicata, causes of action are deemed part of a single 'claim' if they arise out of the same transaction or occurrence." *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 591 A.2d 592, 599 (N.J. 1991) (citations omitted).

N.J. Stat. Ann. 3B:17-8. The settlement of an account or estate pursuant to N.J.S.A. 3B:17-8 "is not intended to promote or foster additional litigation." *In re Est. of Skvir*, 407 A.2d 836, 837 (N.J. Super. Ct. App. Div. 1979) Instead, this statute has been described as a "rule of finality" as "[t]hose parties who actually raise and litigate an issue in an accounting proceeding are bound by the judgment entered thereon." *In re Est. of Yablick*, 526 A.2d 1134, 1138 (N.J. Super. Ct. App. Div. 1987). Further, "[a] judgment approving an administrator's final account is conclusive among the parties as to all issues which were raised or might have been raised." *Est. of Skvir*, 407 A.2d at 837. Based on the foregoing, the Court finds that a final judgment was issued in the Chancery Court action.

Next, the Court finds that the fourth prong is satisfied because a determination of the correctness and propriety of Robert's accounting was essential to the Chancery Court's issued judgments. Plaintiff has not submitted persuasive arguments to the contrary. As to the fifth prong, the Court finds that this issue cannot be disputed. It is clear Plaintiff was a party to the Chancery Court action.

Accordingly, the Court finds Defendants have established Plaintiff is collaterally estopped from relitigating the correctness and propriety of Robert's accounting of the Yanz Estate. Plaintiff is precluded from arguing Robert improperly withheld assets from the Yanz Estate.

### D.     Breach of Fiduciary Duty Against Robert (Count II)

The Anglin Defendants argue summary judgment on Plaintiff's breach of fiduciary duty claim is warranted because "the state court's acceptance of Robert's Accounting establishes that Robert did not deprive the [Yanz] Estate of any asset and Plaintiff cannot prove [Robert breached his duty]." (ECF No. 532-1 at 14.) Plaintiff contends Robert breached his fiduciary

duty in his failure to properly administer the Yanz Estate. (ECF No. 125 at 39–44.)

To establish a claim for breach of fiduciary duty, a plaintiff must show "(1) the defendant had a duty to the plaintiff, (2) the duty was breached, (3) injury to plaintiff occurred as a result of the breach, and (4) the defendant caused that injury." *Diaz v. Bank of N.Y.*, Civ. A. No. 15-1954, 2016 WL 111420, at *4 (D.N.J. Jan. 11, 2016) (quoting *Goodman v. Goldman, Sachs & Co.*, Civ. A. No. 10-1247, 2010 WL 5186180, at *10 (D.N.J. Dec. 14, 2010)). It is undisputed that Robert, in his role as the administrator of the Yanz Estate, owed a fiduciary duty to Plaintiff, one of the Yanz Estate's heirs. *See In re Est. of Folcher*, 135 A.3d 128, 137 (N.J. 2016) ("Those who hold the legal title of executor or trustee plainly owe a fiduciary duty to the beneficiaries of the estate or the trust respectively.") However, "pursuant to N.J.S.A. 3B:17-8, all claims of a breach of fiduciary duty existing when Plaintiff objected to the accounting are precluded." *Ehrlich v. McInerney*, Civ. A. No. 17-879, 2017 WL 6371300, at *10 (D.N.J. Dec. 13, 2017). Indeed, the clear language of the statute provides that the fiduciary is discharged "from all claims of all interested parties and of those in privity with or represented by interested parties." N.J. Stat. Ann. 3B:17-8; *see also Ehrlich*, 2017 WL 6371300, at *10 n.9.[24]

Accordingly, the portion of the Anglin Defendants' Motion seeking summary judgment on Count II is **GRANTED**.

### E.  Fraud Against Robert (Count III)

The Anglin Defendants argue summary judgment is warranted on Plaintiff's claim for fraud against Robert because Robert was properly appointed as administrator of the Yanz Estate.

---

[24] The Court also notes Robert testified that he raised the "issue of the unfairness of" Robert's appointment as administrator of the Yanz Estate with the Surrogate's Court which explained to Plaintiff the process of removing Robert as administrator. (November 2022 Dep. Tr. 22:13–24:16.) Yet, Plaintiff did not file a request to remove Robert as administrator. (*Id.* 24:13–16; 130:16–132:3.)

(ECF No. 532-11 at 15.) The Anglin Defendants further argue Plaintiff is collaterally estopped from asserting Robert improperly accounted the Yanz Estate and therefore Plaintiff cannot establish the material misrepresentation element necessary for a fraud claim. (*Id.* at 15–16.)

Under New Jersey law, a claim for common law fraud "requires the satisfaction of five elements: a material misrepresentation by the defendant of a presently existing fact or past fact; knowledge or belief by the defendant of its falsity; an intent that the plaintiff rely on the statement; reasonable reliance by the plaintiff; and resulting damages to the plaintiff." *Liberty Mut. Ins. Co. v. Land*, 892 A.2d 1240, 1247 (N.J. 2006) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)).

Here, when asked "what exactly are [you] alleging is the fraud that was occurring?" (November 2022 Dep. Tr. 10:16–17.) Plaintiff stated the following:

> He committed fraud when he became the administrator under several different points. He committed fraud when he did not include all the aspects of the estate. He committed fraud when he concealed everything from the estate, actually, and from the beneficiaries. I'd have to really recall everything in my mind as to what would constitute fraud on that.

(*Id.* 10:18–24.) The TAC does not provide further clarification of Plaintiff's claim for fraud against Robert. (ECF No. 125 at 44–45.) As noted above, Plaintiff did not challenge Robert's appointment as administrator. Plaintiff's fraud claim is premised upon the assertion that Robert fraudulently administered the accounting of the Yanz Estate. Because Plaintiff is precluded from relitigating this issue, the Court finds that summary judgment is warranted on Plaintiff's claim for fraud. The Court also notes Plaintiff testified that assets he asserted were missing from the Yanz Estate were eventually included as a part of the Yanz Estate and the accounting approved by the Chancery Court. (June 2022 Dep. Tr. 177:16–20, 179:22–180:1, 180:16–23.)

Accordingly, the portion of the Anglin Defendants' Motion seeking summary judgment

on Count III is **GRANTED**.

F.   **Conversion, Embezzlement, and Unjust Enrichment Against Robert (Counts IV, V, and VI)**

In Counts IV–VI, Plaintiff raises claims for conversion, embezzlement, and unjust enrichment against Robert. (ECF No. 125 at 45–48.) Plaintiff raises similar allegations in support of these claims. (*See id.*) In the Second Affidavit, Plaintiff submits "the term[s] conversion and embezzlement are used interchangeably" in his opposition. (ECF No. 564 at 3.)

The Anglin Defendants contend the Court should grant these portions of their Motion because the Chancery Court's "acceptance of Robert's Accounting establishes the propriety of Robert's actions" and Plaintiff is precluded or collaterally estopped from arguing otherwise. (ECF No. 532-1 at 16–18.) In opposition, Plaintiff asserts by December 19, 2014, "the conversions were some $1,949,000.00." (ECF No. 563 at 16.) Additionally, Plaintiff submits by December 26, 2014, "[t]he conversion due to cheating the beneficiaries of their rightful share is ($2.2 Million minus $1,844,000.00)X .91= produces another over $323,000.00. Thus [t]he total of continued conversion to that date over $1,200,000.00." (*Id.* at 18–19.) As of January 2, 2015, Plaintiff contends "the total conversion remains the same at over $1,200,000.00." (*Id.* at 19.) In the Second Affidavit, Plaintiff also argues "[e]vidence of [Mr. Yanz]'s assets which were omitted from [Robert]'s final account are further evidence of conversion committed by [Robert]."

Here, Plaintiff has failed to provide the existence of a genuine dispute of material fact which requires the denial of Robert's summary judgment motion as to these counts. Plaintiff's conclusory arguments regarding his claims for conversion, embezzlement, and unjust enrichment do not suffice. Even though Plaintiff argues that "during the state proceedings [Robert] was forced to include in the estate several assets that he had previously not accounted for," (ECF No.

564 at 28), the Chancery Court ultimately issued a second amended judgment which still provided that "[t]he account stated in the First and Final Account (J-1) and the Supplemental Accounting (P-1) are approved as stated therein" (ECF No. 574-3 at 5). Therefore, the Court's finding that Plaintiff is collaterally estopped from challenging Robert's accounting of the Yanz Estate precludes Plaintiff from relitigating his claims for conversion, embezzlement, and unjust enrichment that are all premised upon allegations that Robert improperly administered, accounted, and withheld assets from the Yanz Estate. *See Est. of Skvir*, 407 A.2d at 837; *Est. of Yablick*, 526 A.2d at 1138; *see also VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) ("To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.") (citations omitted).

Accordingly, the portions of the Anglin Defendants' Motion seeking summary judgment on Counts IV, V, and VI are **GRANTED**.

### G.   Defamation Against Robert and Leavitt-Gruberger (Count VII)

In Count VII, Plaintiff raises claims for defamation against Robert and Leavitt-Gruberger. (ECF No. 125 at 48–50.) In this count, Plaintiff's primary contention is that Robert and Leavitt-Gruberger informed others, including Konsoulis, that Plaintiff had a criminal history. (*See id.*)

In support of their Motions seeking summary judgment on Count VII, Defendants argue Plaintiff's claim for defamation fails because Plaintiff has actually been arrested and jailed in Florida and "the truth of the statement is an absolute defense to a claim of defamation." (ECF Nos. 530-1 at 18–19; 532-1 at 22–23.) Additionally, the Wilentz Defendants assert Plaintiff cannot prove Leavitt-Gruberger acted with malice in his representation of Robert. (ECF No. 530-1 at 19–21.) Plaintiff does not address these arguments in the Affidavits. (*See generally* ECF

Nos. 563, 564.) Therefore, Defendants are entitled to judgment as a matter of law as Plaintiff abandoned these claims since he failed to substantively respond to Defendants' arguments. *See McCarthy v. Int'l Ass'n of Machinists & Aero. Workers*, 2021 WL 5766569, at *2 n.3 (3d Cir. Dec. 6, 2021) ("Plaintiffs abandoned their claims . . . by omitting any reference to them in their opposition to Defendant's motion for summary judgment.").

Assuming Plaintiff had addressed his claims for defamation, the Court finds summary judgment is warranted on Plaintiff's claims for defamation against Robert and Leavitt-Gruberger. To establish a claim for defamation under New Jersey law, a plaintiff must prove: "(1) a false and defamatory statement; (2) communication of the statement to a third party; and (3) fault amounting to negligence or actual malice on the part of the [speaker]." *Lee v. TMZ Prods. Inc.*, 710 F. App'x 551, 560 (3d Cir. 2017) (citing *DeAngelis v. Hill*, 847 A.2d 1261, 1267–68 (N.J. 2004)). Here, Plaintiff's claim fails because he has a criminal history and therefore Plaintiff cannot satisfy the first element. During the June 2022 Deposition, Plaintiff acknowledged he had produced a document in discovery that detailed his criminal history in Florida. (June 2022 Dep. Tr. 28:5–29:17.) Additionally, Plaintiff conceded that his criminal history includes multiple arrests, two of which were for stalking "vindictive women." (*Id.* 20:11–32:22.) Similarly, at the November 2022 Deposition, Plaintiff again acknowledged that his criminal history includes arrests. (November 2022 Dep. Tr. 68:2–69:25, 71:7–10, 79:5–10.) Therefore, the Court finds there is no issue of material fact as to the truthfulness of Robert and Leavitt-Gruberger's alleged defamatory statements. Accordingly, the portions of Defendants' Motions seeking summary judgment on Count VII are **GRANTED**. *See G.D. v. Kenny*, 984 A.2d 921, 928 (N.J. Super. Ct. App. Div. 2009) ("A truthful statement will not support a cause of action based on defamation, and the truth of the statement is an absolute defense to a claim of defamation."); *see also Ward v.*

*Zelikovsky*, 643 A.2d 972, 979 (N.J. 1994) ("True statements are absolutely protected under the First Amendment.") (citation omitted).[25]

### H.   Aiding and Abetting Against Leavitt-Gruberger (Count VIII) and Christan (Count XI)

In Counts VIII and XI, Plaintiff raises claims for aiding and abetting against Leavitt-Gruberger and Christan premised upon their alleged aid in Robert's alleged fraudulent administration and accounting of the Yanz Estate. (ECF No. 125 at 51–54, 57–60.) The Anglin Defendants argue judgment should be entered in Christan's favor on Plaintiff's claim for aiding and abetting as "Plaintiff is precluded by the [Chancery Court]'s approval of the Accounting because it establishes that no [Yanz] Estate assets were stolen or misappropriated." (ECF No. 532-1 at 19.) The Wilentz Defendants argue summary judgment is warranted on Plaintiff's aiding and abetting claim against Leavitt-Gruberger because: (1) an attorney is not liable for aiding and abetting based on the provision of legitimate legal advice; and (2) Plaintiff cannot establish an underlying tort on which to base an aiding and abetting claim as Plaintiff is collaterally estopped from challenging the accounting approved by the Chancery Court. (ECF No. 530-1 at 22–27.) Plaintiff does not respond to Defendants' substantive arguments in the Affidavits. (*See generally* ECF Nos. 563, 564.)

"Aiding and abetting fraud is a cognizable civil cause of action under New Jersey law." *N.J. Dep't of Treasury ex rel. McCormac v. Qwest Commc'ns. Int'l, Inc.*, 904 A.2d 775, 782

---

[25] The Court also notes Plaintiff has not provided credible proof or evidence that the alleged defamatory statements were actually made. Indeed, Plaintiff testified: (a) Konsoulis did not specifically state Leavitt-Gruberger told her Plaintiff had a criminal history (November 2022 Dep. Tr. 76:17–77:1); and (b) Plaintiff did not take contemporaneous notes of his alleged conversation, nor did he record it (*id.* 68:2–69:25, 71:7–10). Further, Konsoulis has submitted a certification that provides she has "no recollection of speaking to [Leavitt-Gruberger] in connection with the [Surrogate's Court] proceedings for, or in any way relating to, the [Yanz Estate]" and that she has "no recollection of speaking to [Leavitt-Gruberger] regarding Plaintiff, including any alleged discussion of Plaintiff's criminal history." (ECF No. 530-6 ¶¶ 3–4.)

(N.J. Super. Ct. App. Div. 2006). One is liable for aiding and abetting where the individual "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to other so to conduct himself." *Id.* (quoting *Judson v. Peoples Bank & Tr. Co.*, 134 A.2d 761, 767 (N.J. 1957)).

Here, Plaintiff's claims for aiding and abetting fraud against Leavitt-Gruberger and Christan are precluded because the Chancery Court's approval and acceptance of the accounting of the Yanz Estate establishes the propriety of Robert's role as administrator. Therefore, Plaintiff cannot establish "proof of the underlying tort," *i.e.*, Robert's fraudulent administration., which is another prerequisite for establishing a claim for aiding and abetting. *See id.* at 784.[26] As to Plaintiff's claim for aiding and abetting against Leavitt-Gruberger, the Court finds that summary judgment in favor of Leavitt-Gruberger is warranted for the alternative reason that Plaintiff has not provided any evidence to support his claim that Leavitt-Gruberger improperly acted in his representation of Robert.

Accordingly, Defendants' Motions seeking summary judgment on Plaintiff's claims for aiding and abetting against Leavitt-Gruberger (Count VIII) and Christan (Count XI) are **GRANTED**.

I. **Respondeat Superior Against WGS (Count X)**

In Count X, Plaintiff raises a claim entitled "Respondeate [sic] Superior/ Strict Liability" against WGS. (ECF No. 125 at 54–56.) Essentially, Count X alleges WGS is vicariously liable for Leavitt-Gruberger's actions in representing Robert. (*See id.*) The Wilentz Defendants argue

---

[26] Plaintiff testified that his claim against Christan "refer to her assisting Robert in removing [the assets of the Yanz Estate] and, I believe disposing them." (November 2022 Dep. Tr. 18:3–4.) When asked "your entire claim against [Christan] has to do with the assets that you assert that should have been in estate that are not in the estate[?]" (*Id.* 18:16–19.) Plaintiff answered "[t]hat's actually all I can prove at this particular point, I believe." (*Id.* 18:20–21.)

summary judgment is warranted on Plaintiff's claim for respondeat superior because even if any of Leavitt-Gruberger's alleged wrongful conduct occurred, this conduct was outside the scope of his employment. (ECF No. 530-1 at 32.) Plaintiff did not respond to the Wilentz Defendants' substantive arguments. (*See* ECF Nos. 563, 564.)

"[U]nder the doctrine of respondeat superior an employer will be held vicariously liable 'for the negligence of an employee causing injuries to third parties, if, at the time of the occurrence, the employee was acting within the scope of his or her employment.'" *Haviland v. Lourdes Med. Ctr. of Burlington Cnty.*, 272 A.3d 912, 918 (N.J. 2022) (quoting *Carter v. Reynolds*, 815 A.2d 460, 463 (2003)). Further, "[t]o establish vicarious liability, a plaintiff must demonstrate '(1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment.'" *Id.* (quoting *Carter*, 815 A.2d at 463). The New Jersey Supreme Court has noted there are four factors to consider in analyzing whether an employee's act is within the scope of his or employment:

> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master; and
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

*Davis v. Devereux Found.*, 37 A.3d 469, 489–90 (N.J. 2012) (quoting Restatement (Second) of Torts § 228(1) (Am. L. Inst. 1965)).

Here, WGS is not liable under the doctrine of respondeat superior because, as found elsewhere in the Opinion, summary judgment is entered in favor of Leavitt-Gruberger on all counts asserted against him; therefore, Plaintiff's claim for vicarious liability under the doctrine of respondeat superior separately fails. *See Vaniewsky v. Demarest Bros. Co.*, 148 A. 17, 18 (N.J.

1929) ("The liability of the servant is primarily due to his wrongful act; that of the master is derivative and predicated wholly upon such primary liability.") Notwithstanding, the Court also finds the alleged wrongful conduct by Leavitt-Gruberger, in allegedly defaming, aiding and abetting, and conspiring to commit fraud associated with Robert's administration of the Yanz Estate, was not within the scope of Leavitt-Gruberger's employment with WGS. Further, Plaintiff has not provided evidence, factual support, or even allegations establishing that WGS authorized Leavitt-Gruberger to commit any of the alleged wrongs. *See Licette Music Corp. v. Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, P.A.*, No. A-6595-06T2, 2009 WL 2045259, at *7–11 (N.J. Super. Ct. App. Div. July 16, 2009) (holding a law firm was not vicariously liable for attorney's acts as a consultant for plaintiff despite being employed by the firm because attorney was not acting within actual or apparent authority).

Accordingly, the Wilentz Defendants' Motion seeking summary judgment on Count X is **GRANTED**.

## J. Concealment and Spoliation of Evidence Against Robert (Counts XII and IXX)

In Count XII, Plaintiff raises a claim for concealment against Robert and contends Robert concealed: "knowledge of the Plaintiff from the [Surrogate's Court]"; "the funeral proceedings"; "the probate proceedings"; "his administrator application"; and "undisclosed assets." (ECF No. 125 at 60–61.) In Count IXX, Plaintiff alleges Robert: "destroyed or concealed the records of [Yanz]'s collectibles"; "destroyed [Yanz]'s valid Will"; "concealed records on undisclosed pecuniary assets of [the Yanz Estate]"; and "[Robert] has concealed records of undisclosed chattel of [the Yanz Estate]." (*Id.* at 68–71.)

The Anglin Defendants submit "Robert could not have concealed a funeral held before he was appointed administrator, probate proceedings that are public, or his filing to become

administrator of the Yanz Estate." (ECF No. 532-1 at 20.) The Anglin Defendants again argue Plaintiff is precluded from asserting assets are missing from the Yanz Estate. (*Id.*) The Anglin Defendants also submit summary judgment is warranted on Plaintiff's spoliation claim "because New Jersey does not recognize the intentional tort of spoliation of evidence and instead recognizes it as an invocation of the tort of fraudulent concealment." (*Id.*) In opposition, Plaintiff argues Robert concealed assets. (*See generally* ECF Nos. 563, 564.)

The elements for a fraudulent concealment claim are as follows:

> (1) that defendants had a legal obligation to disclose the evidence to plaintiff; (2) that the evidence was material to plaintiff's case; (3) that plaintiff could not have readily learned of the concealed information without defendant disclosing it; (4) that defendant intentionally failed to disclose the evidence to plaintiff; and (5) that plaintiff was harmed by relying on the nondisclosure.

*Rosenbilt v. Zimmerman*, 766 A.2d 749, 757 (N.J. 2001) (quoting *Hirsch v. General Motors Corp.*, 628 A.2d 1108, 1116 (N.J. Super. Ct. Law Div. 1993). "New Jersey appellate courts have not recognized the tort of negligent spoliation of evidence." *Gilleski v. Cmty. Med. Ctr.*, 765 A. 2d 1103, 1106 (N.J. Super. Ct. App. Div. 2001); *see also Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1191 n.6 (N.J. 2008) ("[S]poliation claims as between parties to a parties litigation, are technically claims for fraudulent concealment. . . . Because they continue to be a type of fraud claim, we have not in the past recognized, and we do not now recognize, any separate tort for negligent spoliation.") (citation omitted).

Here, Plaintiff testified that he was referring to the concealment of facts concerning Robert's appointment as administrator of the Yanz Estate. (November 2022 Dep. Tr. 19:7–21:6.) Additionally, when questioned about his claim for spoliation of evidence, Plaintiff testified "I believe [Robert] did something with [Yanz]'s records of his assets, including his collectibles. I believe he also did not produce in discovery all the documentations that he should have and

36

communications that were requested." (*Id.* 39:21–25.) Plaintiff has not provided any admissible evidence or proof establishing these claims; instead, Plaintiff seemingly relies on the unsupported allegations contained in the TAC. Therefore, the Anglin Defendants are entitled to judgment as a matter of law on these claims because Plaintiff abandoned these claims. *See McCarthy*, 2021 WL 5766569, at *2 n.3; *see also Williams*, 2020 WL 3567315, at *2 n.4. Notwithstanding, to the extent Plaintiff's claims for concealment and spoliation of evidence are based upon unaccounted for assets in the Yanz Estate or Robert's appointment as administrator, the Court again notes Plaintiff is precluded from relitigating these issues.

Based on the foregoing, the portions of the Anglin Defendants' Motion seeking summary judgment on Plaintiff's claims for Concealment and Spoliation of Evidence against Robert (Counts XII and IXX) are **GRANTED**.

### K.    Conspiracy to Commit Fraud (Count XIV) Against Defendants

In Count XIV, Plaintiff alleges Defendants engaged in a conspiracy to commit fraud. (ECF No. 125 at 61–65.) Plaintiff contends "[Robert] and senior members of [WGS] . . . develop[ed] an agreement concerning the handling of the estate and assets and estate proceedings of [Yanz]." (*Id.* at 61.) Plaintiff further alleges that this agreement "exclud[ed] rightful heirs in probate proceedings," and "exclud[ed] some of [Yanz's] assets from probate proceedings." (*Id.* at 61–62.)

Defendants argue Plaintiff's claim for conspiracy to commit fraud is precluded. (ECF No. 530-1 at 29; ECF No. 532-1 at 21.) Defendants further contend that Plaintiff's allegation of a conspiracy to overpay taxes from funds of the Yanz Estate and then recover refunds is

meritless.[27] (ECF No. 530-1 at 29–30; ECF No. 532-1 at 21–22.) Plaintiff did not respond to Defendants' substantive arguments. (ECF Nos. 563, 564.)

"In New Jersey, a civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.'" *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005) (quoting *Morgan v. Union Cnty. Bd. of Chosen Freeholders*, 633 A.2d 985, 998 (N.J. Super. Ct. App. Div. 1993), *certif. denied*, 640 A.2d 850 (N.J. 1994)).

As discussed above, Plaintiff's allegations and claims for fraud are primarily premised upon the assertion that Robert fraudulently administered the Yanz Estate and therefore Plaintiff is precluded from pursuing his underlying fraud claim against Robert. Therefore, Plaintiff's allegations of a conspiracy to commit fraud, to the extent they are based on Defendants' handling of the estate and the exclusion of heirs and assets, are similarly precluded by the Chancery Court action. Further, the Court agrees with Defendants regarding the allegations of a conspiracy to defraud "tax authorities." As stated by the Wilentz Defendants:

> [A]llegation[s] of [a] conspiracy to overpay taxes from Estate funds and recover any refunds in their personal names is likewise meritless because all relevant taxes due from the Estate were included in the Accounting approved by the [Chancery Court] and Plaintiff is precluded from challenging that approval in this Court. Moreover, all Estate tax forms were completed and filed by duly licensed CPAs at Topche & Company LLC. Overpayment of taxes would also require an overestimation of the value of the Estate, which would *increase* the distributions to Estate heirs.

(ECF No. 530-1 at 29–30; *see also* ECF No. 532-1 at 21–22) (emphasis in original). Based upon

---

[27] At the November 2022 Deposition, Plaintiff testified that his conspiracy to commit fraud claim includes allegations that Defendants conspired to defraud "tax authorities" by overpaying estate taxes then Defendants waited for the Yanz Estate to be closed, and thereafter received the excess payments in their personal names. (November 2022 Dep. Tr. 27:16–28:22.)

the arguments set forth by Defendants and Plaintiff's failure to substantively respond, the Court

finds Plaintiff has failed to demonstrate a genuine dispute as to any material fact. *See McCarthy*,

2021 WL 5766569, at *2 n.3; *see also Williams*, 2020 WL 3567315, at *2 n.4.

Accordingly, the portions of Defendants' Motions seeking summary judgment on Count

XIV are **GRANTED**.

### L.      Civil Rights Violations Against Robert (Count XV)

In Count XV, Plaintiff alleges Robert "deprived Plaintiff his precious Rights guaranteed

under the CONSTITUTION OF THE UNITED STATES and FEDERAL LAW and the

Constitution of New Jersey." (ECF No. 125 at 65 (emphasis in original).) Plaintiff alleges Robert

falsely claimed he was a police officer thereby acting under the color of state law to gain trust of

the Surrogate's Court in becoming administrator of the Yanz Estate. (*Id.* at 66–67.) Plaintiff

claims Robert deprived him of due process rights and the "Right to Happiness" in his actions as

the administrator of the Yanz Estate. (*Id.* at 66–67.) The Anglin Defendants argue summary

judgment is warranted because Plaintiff cannot establish a violation of his constitutional rights.

(ECF No. 532-1 at 24–25.)

Here, the Court agrees with the Anglin Defendants. When asked to clarify what

constitutional rights he was deprived of, Plaintiff testified that he was deprived of assets from the

Yanz Estate and that Robert's appointment as administrator deprived him of due process. (June

2022 Dep. 30:7–35:8.) It is unclear if any of these alleged violations rise to the level of a

deprivation of constitutional rights. Plaintiff did not raise any legal arguments or cite to any

caselaw in support of this assertion. *See McCarthy*, 2021 WL 5766569, at *2 n.3; *see also

Williams*, 2020 WL 3567315, at *2 n.4. Even assuming *arguendo* that these events do constitute

a violation of Plaintiff's constitutional rights, Plaintiff is collaterally estopped from pursuing his

claim as to the assets of the Yanz Estate because of the Chancery Court's approval of the accounting. The Court again notes the Surrogate's Court informed Plaintiff of the process of removing Robert as administrator, yet Plaintiff did not act pursuant to these instructions. The Court also finds Robert's unsubstantiated, alleged actions, in falsely claiming that he was a police officer in order to become administrator of the Yanz Estate, were not under the color of state law.[28]

Accordingly, the Anglin Defendants' Motion seeking summary judgment on Count XV is **GRANTED**.

## IV.   CONCLUSION

For the reasons set forth above, the Wilentz Defendants' Motion for Summary Judgment (ECF No. 530) is **GRANTED,** and the Anglin Defendants' Motion for Summary Judgment (ECF No. 532) is **GRANTED**. Judgment is entered in favor of Defendants on Plaintiff's TAC. (ECF No. 125.) This case shall be marked as closed. An appropriate Order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  July 9, 2024

---

[28] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). The Supreme Court has stated that an otherwise private actor may be liable under § 1983 as a state actor in limited circumstances, including "(i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." Manhattan Cmty. *Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) (citation omitted). The Anglin Defendants and Plaintiff did not submit arguments concerning this issue. The Court finds Plaintiff's claim for civil rights violations fails on these grounds as well.